UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No. 07-10249-JLT

UNITED STATES OF AMERICA

v.

LUIS ALIX

**REPORT AND RECOMMENDATION RE:**
**MOTION PURSUANT TO 28 U.S.C. § 2255 TO VACATE,**
**SET ASIDE, OR CORRECT SENTENCE**
**(DOCKET ENTRY # 265)**

**February 10, 2014**

**BOWLER, U.S.M.J.**

Pending before this court is a motion to vacate, set aside and or correct a sentence filed by defendant Luis Alix ("defendant") pursuant to 28 U.S.C. § 2255 ("section 2255").  (Docket Entry # 265).  On July 8, 2013, the United States of America ("the government") filed a response to the section 2255 motion addressing inter alia the ineffective assistance of counsel claim.  (Docket Entry # 266).  Thereafter, defendant submitted a reply brief and a supplement to the motion to vacate.  (Docket Entry ## 268 & 269).

PROCEDURAL BACKGROUND

The motion alleges one ground as a basis for vacating the sentence.  Defendant claims that he received ineffective assistance of counsel at both trial and the sentencing hearing.  Specifically, he claims his attorney failed to introduce evidence that defendant received a loan of $10,000 from River-Works Credit Union ("River-Works") several weeks prior to his arrest.  Defendant further alleges that due to such failure on his counsel's part, the Government was allowed to make the inference that the $9,500 seized during a search of defendant's residence was "drug proceeds," which allowed the jury to find beyond a reasonable doubt that he had been engaging in a conspiracy to possess and distribute more than 500 grams of cocaine.

An evidentiary hearing is not required to resolve the motion.  As discussed in greater detail below, even accepting defendant's nonconclusory statements of facts as true to the extent not contradicted by the record, defendant is not entitled to relief. See David v. United States, 134 F.3d 470, 477 (1st Cir. 1998) (setting forth evidentiary hearing standard in section 2255 proceeding); United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993) ("court need not give weight to conclusory allegations"); Myatt v. United States, 875 F.2d 8, 11 (1st Cir. 1989)

(hearing not necessary if section 2255 motion "is

'conclusively refuted as to the alleged facts by the files

and records of the case'"). Defendant fails in his burden

to establish the need for an evidentiary hearing. See

United States v. McGill, 11 F.3d at 225 (recognizing the

petitioner bears burden of establishing need for

evidentiary hearing in section 2255 proceeding). The

motion to vacate, together with the government's filings

(Docket Entry ## 265 & 266) and petitioner's responses

(Docket Entry # 268 & 269), are therefore ripe for review.


BACKGROUND[1]

I.  Guilty Plea of Canelo and Arrest of Luis Alix

Co-defendant Edwin Alejandro Canelo ("Canelo") was a

drug dealer of cocaine and oxycodone who received his

supply from co-defendant Jose Roman Alix ("Jose Alix"),

defendant's brother. In May 2007, Canelo bought two

kilograms of cocaine from Jose Alix, but was unable to sell

both kilograms. Canelo thereafter sold one kilogram of the

cocaine obtained from Jose Alix to defendant after a series

---

[1]    " A section 2255 petition must be dismissed whenever
'the motion and the files and records of the case
conclusively show that the prisoner is entitled to no
relief.'" United States v. Williams, 2012 WL 2149823, *1,
*2 (D.Mass. March 22, 2012). The underlying facts are
taken from the trial transcripts.

of negotiations via telephone calls.  Canelo's telephone
calls, however, were monitored by the Drug Enforcement
Administration ("DEA") as part of a larger investigation
into Canelo's drug-related activities.  On June 20, 2007,
Canelo and another defendant were arrested and charged with
conspiracy and sale of cocaine and oxycodone pursuant to a
criminal complaint which named four individuals.

On March 5, 2008, Canelo pled guilty to drug
trafficking and agreed to cooperate with the government
wherein he provided information about a number of people,
including defendant.  Defendant was subsequently arrested
on March 20, 2008, pursuant to a Superseding Indictment
returned March 13 2008, naming the defendant and several
others.  At the time of defendant's arrest, officers seized
$9,500 in defendant's apartment.

II.  Subsequent Proceedings and Counsel's Representation

The superseding Indictment issued on March 13, 2008,
and charged defendant with one count of conspiring to
distribute cocaine.  On March 20, 2008, defendant had his
initial appearance and a magistrate judge issued an order
of temporary detention.  The magistrate judge appointed
Raymond A. O'Hara, Esq. ("first counsel") to represent
defendant pursuant to the provisions of the Criminal
Justice Act as it pertains to indigent defendants.

On November 15, 2010, a jury trial commenced with first counsel representing defendant throughout the trial. During the five day trial, the government played a series of audiotapes consisting of recorded conversations between Canelo and defendant.  The recordings corroborated the government's assertion that a drug transaction between Canelo and defendant of a kilogram of cocaine was to take place.  On November 22, 2010, the jury found defendant guilty of conspiracy to distribute cocaine.

On December 6, 2010, attorney Carl N. Donaldson, Esq. ("second counsel") filed a notice of appearance for defendant.  (Docket Entry # 198).  On December 6, 2010, first counsel withdrew from the case.  (Docket Entry # 199).

On March 8, 2011, the court sentenced defendant to 60 months imprisonment, the applicable statutory mandatory minimum, followed by four years of supervised released and a $100 special assessment.  (Docket Entry # 223).  At sentencing, the court found by a preponderance of the evidence that the conspiracy involved at least 500 grams of a mixture or a substance containing a detectable amount of cocaine based on the recorded telephone calls between defendant and Canelo on May 24, May 30 and June 11, 2007.

On March 19, 2011, second counsel filed a notice of
appeal.  (Docket Entry # 222).  On May 16, 2011, the court
allowed defendant's motion to appoint J. Thomas Kerner,
Esq. to represent defendant.  (Docket Entry # 228).  On
September 5, 2012, the First Circuit affirmed the
conviction.  (Docket Entry # 254).  Thereafter, defendant
filed the motion attacking his conviction due to
ineffective assistance of counsel and challenged his
sentence because the court applied an incorrect burden of
proof.  (Docket Entry ## 265 & 269).  In the supplemental
memorandum, defendant attacks his sentence because the
court used a preponderance of the evidence standard rather
than finding that defendant was responsible for more than
500 grams of cocaine beyond a reasonable doubt.  (Docket
Entry # 269).

## DISCUSSION

### I.  Section 2255 Review

Section 2255 "provides for post-conviction relief in
four instances, namely, if the petitioner's sentence (1)
was imposed in violation of the Constitution, or (2) was
imposed by a court that lacked jurisdiction, or (3)
exceeded the statutory maximum, or (4) was otherwise
subject to collateral attack."  David v. United States, 134
F.3d at 474 (citing Hill v. United States, 368 U.S. 424,

426-27 (1962)). The fourth category "includes only
assignments of error that reveal 'fundamental defects'
which, if uncorrected, will 'result in a complete
miscarriage of justice,' or irregularities that are
'inconsistent with the rudimentary demands of fair
procedure.'" David v. United States, 134 F.3d at 474.
Stated otherwise, "apart from claims of constitutional or
jurisdictional nature, a cognizable section 2255 claim must
reveal 'exceptional circumstances' that make the need for
redress evident." Id.

Defendant bears the burden of establishing the need
for section 2255 relief. Id. Specifically, a defendant
must establish that his sentence was imposed in violation
of the Constitution or the laws of the United States
involving a "fundamental defect which inherently results in
a complete miscarriage of justice" or "an omission
inconsistent with rudimentary demands of fair procedure."
Hill v. United States, 368 U.S. at 426-27 (1962). To
obtain relief under section 2255, petitioner "must clear a
significantly higher hurdle that would exist of direct
appeal." United States v. Frady, 456 U.S. 152, 166 (1982).

II.   Ineffective Assistance of Counsel Claim

In support of the motion to vacate, defendant states that his first and second counsel were ineffective because they failed to introduce evidence that defendant received a loan of $10,000 from River-Works prior to his arrest. Defendant further alleges that due to this failure, the government created an unrebutted inference that the $9,500 seized during the search of defendant's residence was evidence of drug proceeds.  Evidence of the loan, defendant contends, would have countered the government's assertion. With respect to sentencing, defendant argues that if second counsel had introduced evidence of the loan, the court might not have found by a preponderance of the evidence that defendant conspired to possess with intent to distribute more than 500 grams of cocaine.

The well established Strickland test governs Sixth Amendment ineffective assistance of counsel claims. Strickland v. Washington, 466 U.S. 688 (1984); see also Duguay v. Spencer, 677 F.Supp.2d 334, 346 (D.Mass. 2009). To succeed under Strickland, defendant must demonstrate that his attorney's performance was constitutionally deficient and prejudicial.  United States v. McGill, 11 F.3d 223, 226 (1st Cir. 1993); accord Phoenix v. Matesanz, 233 F.3d 77, 81 (1st Cir. 2000).

8

An attorney's performance is deficient where it is "so inferior as to be objectively unreasonable."  United States v. McGill, 11 F.3d 223, 266 (1st Cir. 1993).  Moreover, "'Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  Lopez-Nieves v. United States, 917 F.2d 645, 649 (1st Cir. 1990) (quoting Strickland v. Washington, 466 U.S. at 690).  Applying the Strickland standard, the First Circuit has emphasized that, "the Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather, the performance standard is that of a reasonably effective assistance under circumstances then obtaining."  United States v. Natanel, 938 F.2d 302, 309-10 (1st Cir. 1991); accord Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993); see also United States v. McGill, 11 F.3d at 227 ("to avoid the shoals of ineffective assistance, an attorney's judgment need not necessarily be right, so long as it is reasonable").  For example, an attorney renders ineffective assistance where he fails to "raise an important, obvious defense without any imaginable strategic or tactical reasons for the omission."  Prou v. United States, 199 F.3d 37, 48 (1st Cir. 1999) (failure of attorney to raise government's untimely filing of information

9

seeking sentence enhancement was deficient inasmuch as the claim "was a clear winner and presenting it would have risked nothing").  "The performance standard is to be applied not in hindsight, but based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented."  Natanel, 938 F.2d at 309-10; see United States v. Bosch, 584 F.2d 1113, 1121 (1st Cir. 1978).

   With respect to prejudice, "[i]t is not enough to show that the errors had some conceivable effect on the outcome."  Gonzales-Soberal v. United States, 244 F.3d 273, 278 (1st Cir. 2001) (internal quotations omitted).  The second prong of Strickland requires proof that "counsel's errors prejudiced the defense" focusing on "the 'fundamental fairness of the proceeding.'"  Gonzales-Soberal v. United States, 244 F.3d at 277-78; accord Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) (prejudice prong focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair").  Under this prong, it is incumbent on defendant to demonstrate "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to

10

undermine confidence in the outcome.'" Phoenix, 233 F.3d
at 81 (quoting Williams v. Taylor, 529 U.S. at 390). A
court may only deem a trial lawyer's performance as
constitutionally deficient when counsel's conduct subverts
the judicial process in a way that "the trial cannot be
relied on as having produced a just result." Strickland,
466 U.S. at 686. In short, defendant must demonstrate
"that counsel's errors were so serious as to deprive the
defendant of a fair trial, a trial whose result is
reliable." Strickland, 466 U.S. at 687.

The decisions by the first counsel at trial and the
second counsel at sentencing not to proffer evidence of
defendant's loan from River-Works does not constitute
deficient representation that would "overcome the
presumption that, under circumstances, the challenged
action might be considered sound trial strategy."
Strickland, 466 U.S. at 689 (internal quotation omitted).
Rather, each decision was a reasoned choice to hide
defendant's history of drug dealing. By affidavit, first
counsel attests that he chose not to proffer testimony that
the $9,500 found in defendant's apartment was the proceeds
of a loan because he feared it would open up the
"proverbial door" for the government to introduce evidence
of defendant's extensive drug dealing. (Docket Entry #

11

267).   Counsel's choice not to show evidence of the loan

because it might lead to an introduction of damaging

evidence of defendant's drug dealing was a reasonable

tactical decision.   Given the facts and circumstances at

the time, neither first counsel's decision nor second

counsel's decision was not "so patently unreasonable that

no competent attorney would have made it."   Knight v.

Spencer, 447 F.3d 6, 15 (1st Cir. 2006).

     Likewise, the decisions during trial and at sentencing

not to mention the existence of defendant's loan from

River-Works was not so prejudicial that "the result of the

proceeding would have been different."   Williams, 529 U.S.

at 390.   At trial, first counsel's decision not to raise

the issue did not deprive defendant of a fair trial.

Similarly at sentencing, the government did not bring up

the issue of the seized $9,500 at all.   The court at

sentencing stated that it found by a preponderance of the

evidence that defendant's conspiracy conviction involved

more than 500 grams of cocaine based primarily, if not

exclusively, upon the recorded conversations between

defendant and Canelo.   Thus, the $9,500 seized in

defendant's residence more than likely did not factor into

the court's sentence adversely.

In sum, defendant fails to meet his burden to show
both defective performance and prejudice with respect to
the two alleged deficiencies of first and second counsel.
Section 2255 relief is therefore not available on the basis
of a violation of the Sixth Amendment.

III.   Claim of Re-sentencing under Alleyne

Defendant claims that he is entitled to re-sentencing
in light of the recent ruling in Alleyne v. United States,
133 S.Ct. 2151 (2013).  Defendant claims that, because
Alleyne is a watershed rule of criminal procedure
warranting retroactive application, he is entitled to re-
sentencing because neither the jury nor even the judge
determined beyond a reasonable doubt that defendant was
responsible for 500 or more grams of cocaine.  (Docket
Entry # 269).

The Court in Alleyne "held that the Sixth Amendment
right to trial by jury requires that the Apprendi[2] doctrine
applies equally to facts that increase a mandatory minimum
sentence."[3]  United States v. Harakaly, 734 F.3d 88, 94 (1st
Cir. 2013).  Apprendi, in turn, "held that, '[o]ther than

---

[2] Apprendi v. United States, 530 U.S. 466 (2000).
[3] Alleyne overruled the 2002 decision in Harris v. United
States, 536 U.S. 545 (2002).  Harris "distinguished facts
that increase a sentence beyond a statutory maximum from
facts that trigger or increase a mandatory minimum
sentence."  United States v. Harakaly, 734 F.3d 88, 93 (1st
Cir. 2013).

the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'"   Id. (quoting Apprendi, 530 U.S. at 490).  Thus, the decision in Alleyne extends the Apprendi rule by applying it to any fact that increases that mandatory minimum sentence and, in general, requires that such facts "must be submitted to the jury and found beyond a reasonable doubt."   Alleyne, 133 S.Ct. at 2163.

In determining whether Apprendi applies retroactively to cases on collateral review, the First Circuit has applied the Supreme Court's analysis in Teague v. Lane, 489 U.S. 288 (1989).  See Sepulveda v. United States, 330 F.3d 55, 63 (1st Cir. 2003) (quoting Teague, 489 U.S. at 288). The Supreme Court's holding in Teague generally bars retroactive application of new rules of criminal procedure subject to two exceptions.  Sepulveda 330 F.3d at 59. Alleyne is undeniably a new rule of criminal procedure. United States v. Doe, _F.3d_, 2013 WL 6697824, *12 (1st Cir. Dec. 20, 2013) (discussing Alleyne); accord In re Payne, 733 F.3d 1027, 1029 (10th Cir. 2013) ("we agree with the Seventh Circuit that Alleyne actually does not set forth 'a new rule of constitutional law'") (quoting Simpson v. United States, 721 F.3d 875, 876 (7th Cir. 2013)).

The first exception in <u>Teague</u> allows for retroactive application of new rules "that either (a) prohibit criminal punishment for certain types of primary conduct, or (b) forbid the imposition of certain categories of punishment for particular classes of defendants." <u>Sepulveda</u> 330 F.3d at 59. Defendant relies on the second <u>Teague</u> exception. The second exception of non-retroactivity under <u>Teague</u> is for "'watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.'" <u>Sepulveda</u>, 330 F.3d at 59 (quoting <u>Graham v. Collins</u>, 506 U.S. 461, 478 (1993)). The Supreme Court has defined a watershed rule of criminal procedure as one that, if infringed, "'seriously diminish[es] the likelihood of obtaining an accurate conviction.'" <u>Id.</u> (quoting <u>Tyler v. Cain</u>, 533 U.S. 656, 665 (2001).

As an issue of first impression in the First Circuit, <u>Apprendi</u> does not fall within either of <u>Teague</u>'s limited exceptions to non-retroactivity. In finding that <u>Apprendi</u> did not constitute a watershed rule, the First Circuit noted that, "The rule that <u>Apprendi</u> announces assures a previously convicted defendant that increased punishment, over and above the default statutory maximum, can only be imposed if the factual predicate for the increase—other

15

than a prior criminal conviction—is confirmed by a jury to

a higher quantum of proof." Sepulveda 330 F.3d at 61.

While the First Circuit has not yet considered whether

Alleyne applies retroactively, the court recently described

Alleyne as an extension of the Apprendi doctrine.

Harakaly, 734 F.3d at 94. The Second, Seventh and Tenth

Circuits however uniformly conclude that Alleyne does not

fall under either the first or the second exception in

Teague. See United States v. Redd, 735 F.3d 88, 91 (2nd

Cir. 2013) (collecting cases from Fourth, Seventh and Tenth

Circuits); accord United States v. Hernandez, 731 F.3d 666,

672 (7th Cir. 2013). The rule announced in Alleyne should

not be deemed a watershed rule of criminal procedure when

the rule announced in Apprendi was not. See United States

v. Butterworth, 2013 WL 6670377, at *5 (D.Me. Dec. 18,

2013). Although defendant alleges Alleyne has retroactive

effect to cases collaterally attacking a sentence, case law

interpreting Alleyne suggests the opposite. Bultmeyer v.

Grondolsky, 2013 WL 5538450, at *2 (D.Mass. Oct. 4, 2013);

Butterworth, 2013 WL 6670377, at *5; Simpson v. United

States, 721 F.3d 875, 876 (7th Cir. 2013); In re Payne, 733

F.3d at 1029 ("Court has not held that Alleyne applies

retroactively to cases on collateral review"); Mingo v.

United States, 2013 WL 449929, at *2 (W.D.Mich. Aug. 19,

16

2013) (holding that <u>Alleyne</u> does not qualify as a new
watershed rule); <u>Munguia v. United States</u>, 2013 WL 5306192,
at *17 (E.D.Tenn. Sept. 20, 2013) (finding that the rule in
<u>Alleyne</u> cannot be applied retroactively to cases on
collateral review under section 2255).

In sum, defendant does not have a cognizable claim to
re-sentencing under <u>Alleyne</u>.  Defendant's argument that
<u>Alleyne</u> presents a watershed rule of criminal procedure
that warrants retroactive application fails because the
rule in <u>Alleyne</u> is an extension of the <u>Apprendi</u> doctrine.


<u>CONCLUSION</u>

Based on the foregoing reasons, this court **RECOMMENDS**[4]
that the section 2255 motion (Docket Entry # 265) be
**DENIED**.


/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[4] Any objection to this Report and Recommendation must be
filed with the Clerk of Court within 14 days of receipt of
the Report and Recommendation to which objection is made
and the basis for such objection.  Any party may respond to
another party's objection within 14 days after service of
the objections.  Failure to file objections within the
specified time waives the right to appeal the order.